Thank you, Your Honor, and it may it please the Court, Jonathan Franklin for the appellant. I realize it is no accident, or I think it's no accident, that we are hearing this case today, the same day as we've just heard the Bennett case. I'd like to emphasize at the outset that there are similarities in our case and differences, and that the similarities between our case and the prior case make our case strong, in my view, and the differences make it stronger. Just like in the prior case, we are seeking an injunction against a proceeding, an administrative proceeding, that's being conducted without lawful authority. That's a strong similarity, and I think for many of the same reasons that the counsel for Ms. Bennett has just laid out, we would agree with those. However, in our case, in their case, to my knowledge, there's no dispute that there is statutory authority to conduct that proceeding, that Congress intended for that particular kind of claim to be brought in the particular tribunal. In our case, we are challenging the statutory authority of this agency to conduct these prosecutions to begin with. Right. You're challenging FINRA's authority to discipline you for violations of the Securities Act when it was created and operates under the authority of the Exchange Act. That is correct. So your argument is that FINRA's action is ultra-virus? Ultra-virus, Your Honor. And I would like to note four key points, all of which I believe are uncontested in this case. First, the only statutory violations that Congress gave FINRA the authority to prosecute are violations of the Exchange Act, not the Securities Act. By contrast, Congress expressly gave the SEC, not FINRA, the authority to prosecute violations of the Securities Act. Second, every claim that's being brought against appellants in this case is predicated or turns on an alleged violation of the Securities Act, not the Exchange Act. Why is it, I'm sorry, you haven't listed, go ahead and list your four. Okay. Third, Your Honor, if there is no prior judicial review, it allowing the agents, the same agency that brought these charges in the first place to adjudicate them would threaten to deprive appellants of their very livelihoods and their business, given FINRA's enormous authority over broker-dealers. And fourth and finally, and this is a point that was made in the prior argument, unless Congress has abrogated it, the jurisdiction does exist in the district court to review the claim that we are bringing that the agency is acting outside of its statutory authority. And I think all four of these points, FINRA does not contest any of these points in its brief. And they form the backdrop for the case-specific inquiry that the court has to look into to determine whether or not Congress has, in fact, stripped the jurisdiction of the district courts to hear this kind of as Counselor Ms. Bennett did, that this is a claim and case-specific inquiry. And we do, Judge Motz and the rest of the court, we do, you know, believe that the dissenting opinion in the Tilton case got it correct, that the argument that's being made on the other side essentially proves far too much. But whether the court looks at it under the LEADM test, which we've advocated, which applies to these kinds of claims, statutory claims, or looks at it under the Thunder Basin Free Enterprise test, ultimately the question is one of statutory intent. I was a little curious about, you've seen, you've evidenced a tad bit of ambivalence about Thunder Basin. Is it, you acknowledge that Thunder Basin provides the appropriate analysis for our review? Is it that you dispute how it was applied or that it was applied? No, no, we think it is, we've raised essentially two alternative arguments, you know, when this case was briefed, obviously we knew the Bennett case was pending and so we wanted to emphasize in some respects the LEADM doctrine, which does apply to our case and not their case because it's a statutory claim. But no, we think the Thunder Basin test does apply. It was applied incorrectly in our case and it was applied incorrectly ultimately because the question is one of statutory intent. What did Congress intend? And we delineated the statutory authority of the agencies. And having said, and having said that FINRA does not have authority to prosecute violations of the Securities Act, Congress could not have intended and did not intend for the FINRA to decide for itself whether it can exercise that prohibited authority in a proceeding that it had no authority to institute in the first place. I take that point. My question would be, fine, conceding everything you say, why can't you initially receive meaningful judicial review in the administrative scheme given that both the Exchange Act and the Securities Act percolate up? Three points, Your Honor. The first point is the irreparable harm point, which I don't believe the other side has contested. And that is that if these proceedings are allowed to take their course, our clients, my clients, the appellants in this case would suffer or potentially suffer the loss of their very livelihoods and their business. FINRA has a monopoly over broker dealerships in this country so that if you want to practice in this trade, you need to have FINRA license. And if they carry through with their allow these claims to proceed in court in other cases. But isn't it exactly this kind of harm that anyone who is sued and ultimately vindicated can face? Not anyone, Your Honor. I don't think that anyone can make this claim. And it certainly wasn't. If you looked at the Hill case, for example, in the Eleventh Circuit, the court specifically said they didn't make this kind of claim in the Hill case. So there could be various different kinds of proceedings that are made by different kinds of agencies. Not everyone can make this. Second, though, even if the court wants to discount that factor or moving on, we have the same problem that was faced in the Bennett case as well. And that is that the harm that we are suffering is the harm from going through this prohibited proceeding to begin with, this ultra-virus proceeding. And once we're in that, once that proceeding is ongoing, that harm exists. And it can't, the genie can't be put in the bottle, back in the bottle. The Humpty Dumpty problem exists. And third, I would like to point out another point, and that is the SEC says, we can come in and we can clean all of this up after the fact. But that's not true either because in order for us to get to court, we have to suffer through an adverse determination by the SEC. Our view is, looking at the plain language of the statute, the SEC does not have authority to review these issues. The SEC has primary jurisdiction to consider in the first instance whether or not these charges are justified. And so by the time we have gotten to court, the SEC will have already made a determination on the merits of our claims, a determination that we contend the SEC must only make in an initial investigation, which it has not done. The SEC has not proceeded against us. So that again, that's the kind of, more of the toothpaste that can't be put back into the tube in our case. And so what we submit is that we are entitled to a district court determination by a court of law which has the same or even perhaps better competence to adjudicate this pure question of law. And I would just emphasize just one point that came up in the prior argument, and that is what's the agency expertise factor and how does that play? Before we get to that, and we're happy to hear that, I wonder if you could address Judge Chesno's concerns about whether, in fact, you even have a cause of action here. Yes, Your Honor. We cited the Fiero case in the Second Circuit which addressed this precise issue and held in a very similar context that there was a federal cause of action. Maybe you can explain it to me. Sure, absolutely. There has long been, since Ex parte Young and going back even before that, there's always been an equitable power in the district court to enjoin actions by people exercising government authority when it's contended that they're not exercising lawful authority. And that, the Supreme Court has upheld that equitable power. We're not asking for a private right of action for damages. So what's your claim here? Our claim is for declaratory and injunctive relief under the Exchange Act to prohibit the FINRA from violating the bounds of its statutory authority. Is there some provision of one of these statutes that you rely on that gives you that right to do that? Yes. It's Section 15A of the Exchange Act. We've cited all those in our brief. It says you can go to the district court? Well, there's a jurisdictional provision in the Exchange Act, which is like the section of the Federal Request and Jurisdiction. That's Section 27A. Is 15A that you're relying on? 15A is the substantive provision that outlines what it says that the FINRA, which is the Registered Securities Association, may enforce compliance by its members with the provisions of this chapter. And it's all this provision that we've set forth that talk about the limits on FINRA's statutory authority. And those are the – so just like in FIRA, where the provision that was being asserted was that you don't have statutory authority to collect fines in court. And the Second Circuit said, yes, you have a cause of action that arises under Federal law because you're raising a Federal question and you're seeking declaratory and injunctive relief. And it's not cited in the brief. So you're only seeking Federal declaratory relief, is that it? We're seeking both declaratory and injunctive relief, Your Honor. We had a preliminary injunction. You think it's declaratory relief for one thing and you need the injunctive relief for this other thing in the first case, right? We've asked for both. We moved for a preliminary injunction. I understand, but it sounds to me like the Second Circuit case that you're relying on talked about declaratory relief. No, it didn't. I'm just wondering if this – I didn't think that Judge Chastanet was totally off base in suggesting that there might not even be subject matter jurisdiction. Let me cite a case for you, Your Honor, and I apologize it's not in the briefs, but it's a case called Armstrong and it's – the site is 135 Supreme Court 1378 from 2015. And the Supreme Court there went through the difference between the right of action when you're seeking declaratory injunctive relief in sort of the ex parte young context and when you're seeking a private right of action for damages. And to summarize that court, and I realize the case and I realize it's not before the court, but what the court said, and this is essentially what I will say here, is that there always is inherent jurisdiction and ability of the courts under the All Writs Act and others to restrain a government official or an agent that is acting outside of his lawful authority, except if Congress has taken it away. So it's kind of a reverse from what the private right of action for damages would be. So we have that here. We have a right, just as in FIERA, we have a right of declaratory injunctive relief. And I think in that case, Your Honor, there probably was a claim for injunctive relief. I'd have to look. But the injunctive relief is tied into the declaratory relief. Yes. It's just – It's a – yeah. It's equitable. You have to get the declaratory relief and then you have that, then you say, well, give me an injunction to carry out what you just ruled. It's equitable, though. So what I'm trying to distinguish here is that we're not seeking a private right of action for damages, which is another entirely different inquiry. We're seeking the standard kind of relief that you always can seek when you have an agent. You can come – you can chop these kind of claims around and disrupt all the administrative processes. But all the administrative agencies, the government, before they do anything, you have to go – you all, if you've got enough money, can challenge everything through the court system, whether they're acting within their statutory authority. Well, then you have to – again, the question I think Judge Motz is asking is about the private – The right of action. I'm just musing as to what your calls of action is after. No, I understand that. You're trying to shut everything down. You're trying to shut down the administrative agency. No, we're trying to shut down this particular proceeding, Your Honor. I know. Not the administrative agency. I know the one against you here. You're trying to shut it down. I think that the other – I'm not saying if you get away with this. If we agree with you, down the road, I'm just trying to – I'm musing about what might happen then. Well, each case has to satisfy – and we agree with this – each case has to satisfy either the Thunder Basin line of cases or the Leadham Doctrine in order for us to get to that point, Judge King. We're not – we're not arguing that everybody has the same right here. And I would say that we're actually arguing for a – kind of a narrower relief than the Bennett party was because we're asking only that our particular proceeding be stopped. They're actually saying that the entire ALJ process of the SEC is unconstitutional. I agree with that. So we have a narrower claim in that respect. Well, in some respects, you have a narrower claim. In other respects, they have a narrower claim. But that's – all right. You go ahead. It depends, Your Honor. So I think to get back to what I was saying, ultimately, I think this is a question of congressional intent. And we don't believe that Congress, having not given the agency – and this is, I believe, uncontested. I don't think there's any contest here that the only expressed statutory authority that they have to prosecute statutory violations is the Exchange Act. And they're saying they can just get around that by characterizing any other statutory violation. So if you go through – if your client goes through with this procedure and loses, then what happens? Not this case, but there is an administrative enforcement action brought and loses. Then what? Well, you're not in this court. You're not in this case. Take this case out. So it goes through – the entire administrative process has to go through FINRA's internal process. And it goes through the SEC. Right. Then we have a right in court at that point down the road. In the court of – appropriate court of appeals. Yes. That's correct. Okay. The district court's never involved. Under the hypothetical, no. Yes. Yes. So at that point, though, I think that we will not have meaningful relief. We have suffered this kind of sanction that they're trying to impose on – You've made this Leedem argument. Yeah. So then after Leedem, we have the Board of Governors Federal Reserve System versus MCOR, right? Yes. And in that case, it says, first, central to our decision in Leedem was the fact that the board's interpretation of the act would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights. You've not been deprived of that right. Well, we – I think that's the same – we understand it to be the same as the – as one of the factors of the Thunder Basin factors. Exactly. But you were making, I thought, an argument separate and apart about Leedem. And it runs in – if you have a problem under the other argument, you have a problem – It would be a problem on that factor, Your Honor. Yeah. Yes. I agree with that, on that factor. I think I'd like to reserve the remainder of my time for rebuttal. Sure. Thank you. May it please the Court. Timothy Mounts from FINRA. The dismissal of a complaint should be affirmed, Your Honors. There's a long and unbroken line of circuit and district court cases dismissing suits to enjoin SRO proceedings dating back many years. And that's because Congress made self-regulation the beginning point for regulation of the broker-dealer industry. And that's how the process has to start. Mr. Mounts, if – if OSHA suddenly decided that it had found a Title VII violation and it began – it began to institute some sort of disciplinary proceedings against the employer for violating Title VII, would the employer have any response other than to go through the OSHA regulatory process? Your Honor – Because that's, in essence – the argument – this is a – this is an interesting fact pattern here. Well, Your Honor, what's happened here – No, no, just – I understand that you will – you might not like my hypothetical, but you're kind of stuck with it for purposes of my question. Understood. Understood. And I think if there is a statutory review scheme that is in place that calls for an exclusive method of administrative followed by judicial review, that that is the process that has to be gone through, Your Honor. And that's – and that's what an employer would have to do to challenge OSHA regulatory authority over a perceived Title VII violation. I believe that's the case, Your Honor. But here, what happens in the SRO process is that FINRA first conducts a hearing before a three-person hearing panel. Two of them are from the industry. Then, after that panel issues a FINRA, through the National Adjudicatory Council. That is then the final action of FINRA. And, of course, here what's happened is we've just – we've had a hearing. There's been no even initial decision that's been reached yet. And so, there's been no final action. Now, if there were a final action of FINRA that was appealed to the SEC, there's an automatic stay under FINRA rules of any sanction that's imposed, unless it's a bar or an expulsion from the industry, in which case the respondent has to make an application to the SEC for a stay of that sanction. But there are stays, of course, that are available throughout the process. What about after the SEC acts? The SEC also – a stay can be entered of the SEC's action per request to the appeals on a petition for review. But is that any more often granted than stays in federal district courts? Your Honor, I guess I would defer to my – to counsel for the SEC to answer that question. I think it's a case-by-case basis. Well, I thought you were offering this as sort of a status quo-stays-status quo ante. And, you know, if you never grant a stay, what difference does it make to your ability to grant a stay? Understood. Because the whole purpose of it, Your Honor, is to – that whole question goes to whether there's the opportunity for meaningful review. And my only point here, Your Honor, is clearly that here there is the opportunity for meaningful administrative followed by judicial review. Okay. Can I ask you, because I don't remember this being in your brief, do you concede that they have a cause of action? Not that there's jurisdiction, but that there is a cause of action. Remember the – I don't know, were you counsel in the district court? I was, Your Honor. I recall the exchange with the court. I think there's some question about it. Actually, the parties did not engage on that question. And not engage on appeal either, I don't think. We really have not. I do think that it's clear that the Declaratory Judgment Act standing in and of itself does not confer jurisdiction or create a cause of action. So I think that it is a legitimate and an open question. But not legitimate or open enough for you to pursue it. Well, Your Honor, I think the other issues here, frankly, are dispositive. I think that this is the type of challenge that is – the rule that is involved here is a rule – I want to respond to what – to the arguments that have been made about the fact that FINRA only has authority to operate within the strict confines of the Exchange Act. Because the language that – from the Exchange Act that Scottsdale points to, every time that – it also refers to – it refers to this chapter, so the Exchange Act, rules and regulations under the Act, as well as rules of the association. I must have misunderstood. I didn't think there was actually – you were actually disputing that FINRA was created by and operating under the statutory grant of authority of the Exchange Act. I'm not, Your Honor. Okay. I'm not. What I'm saying is that the Exchange Act gives FINRA the authority to enforce its own rules. I don't think anybody argued about that. All right. And one of the rules that's at issue – there are actually two rules that are issued in this case. Now, only one of them has been mentioned by Scottsdale. The first one is the principle requiring just and equitable principles of trade, conduct in accordance with just and equitable principles of trade, Rule 2010. But there are also, in the second and third causes of action, in the underlying pending complaint, there are causes of action that have been brought – charges that have been brought for violating the supervision rules. This is NASD Rule 3010. And so that's not mentioned in the complaint, Your Honor, and it's not mentioned in any of the appellant's briefs before this Court. But two of the three causes of action here involve those rules. And under those rules, these are rules that have been in place for quite some time, but they require member firms, in the words of the Ninth Circuit in the WTC Court versus SEC case, to establish, maintain and enforce supervisory systems tailored to their businesses and that are reasonably designed to achieve compliance with securities laws and regulations as well as NASD rules. And the rule says – the actual FINRA rule says applicable securities laws and regulations. Now, FINRA has had in its rule books a number of rules relating to the private placements of securities for some time because FINRA firms play a very critical role in preventing the illegal resale of restricted securities into the public markets. I mean, FINRA firms are the gatekeepers to the public markets. And so – Are these rules in the Code of Federal Regulations? No, Your Honor. FINRA has its own rule book called the FINRA Code. And is it entitled to as much – carries as much authority as regulations in the Code? It does, Your Honor, because every one of FINRA's rules has to be approved by the SEC before it becomes effective. And the SEC has to conclude that it complies with the purposes of the Exchange Act to protect investors and is otherwise in compliance with the purposes of the Act. So we have a rule, for example, entitled private placements of securities. We have a rule that's entitled private placements of securities issued by members. We – and we have enforced those rules with respect to the resale of restricted securities pursuant to claimed exemptions under the 33 Act for many years. I just want to bring to the Court's attention one case cited in our briefs, a Ninth Circuit case, a Sorrell v. SEC case. And in that case, a broker was charged by the NASD with selling unregistered securities and therefore violating the just and equitable principles of trade rule. And the individual challenged – he went through the – it went through the process. The individual challenged both the constitutionality of our enabling legislation, the Maloney Act, and also the fact that the – challenged the joint and equitable rule as being void for vagueness. And here's what the Ninth Circuit had to say in denying the petition for review from an SEC order in that case. Quote, Evaluating his, the broker's, vagueness claim in the context of his violations selling unregistered securities, we find Sorrell, the broker, had adequate notice that such an obvious violation of the securities laws would also violate Section 1. Section 1 of the NASD rules at the time was the just and equitable principles of trade rule and affirmed the SEC's fine that was imposed in that case. Your Honor, that case is 34 years old. So where does that go? I'm sorry. Well – To the point that we're talking about today. Your Honor, the underlying rule that's being challenged in this proceeding by Scott Stahel is FINRA Rule 2010. Right. It's the exact same rule that was the subject of – and their position is, is that FINRA has no authority to bring this proceeding or, by the way, any other proceeding. But it doesn't really seem to go, I think, to the question of whether there is the availability of meaningful judicial review of that argument, which I think is what is presented here. Well, Your Honor – No, I just want to – I'm sorry that I didn't understand. No, no, that's all right. Out of oral argument, saying, oh, those judges, where are they? But what you were citing this for is that you've enforced it and the Ninth Circuit said you were right. And the SEC, of course, has to also go through a proceeding where they determine whether it's correct. You said it was correct. I mean, you issued your opinion. The SEC said it was correct and the Ninth Circuit said it was correct. That's right, Your Honor. And I guess what – I think what both of us are trying to get at is, how does this go to the challenge that's being made here? Because was there a challenge there that, no, you can't even make this determination? Yes, well – I had sort of thought this was a new – Well, Your Honor, it was – I guess there were at least two similarities in that case, right? First, they challenged – they challenged FINRA's enabling legislation as being unconstitutional. In that case. Correct. And then they also challenged the specific rule that was being applied to the broker for selling unregistered shares of securities under the 33 Act. Right. As being – And presumably it would be your position that the process, the multilayered process created under the Securities and Exchange Commission rubric has – we have every to that administrative process with appropriate judicial review from a final action by the SEC? Precisely, Your Honor, and most particularly in the case of a challenge to an SRO proceeding where Congress required self-regulation to be the beginning point for the regulatory process and the entire review scheme embedded in the Exchange Act. What was the constitutional challenge there? The constitutional challenge was that the Maloney Act was an unconstitutional delegation of legislative authority to FINRA, which is, of course, a private entity. It's a national securities association, a self-regulatory organization, but it is not a government agency. So that was the nature of that challenge. I see my time is up, Your Honors. We appreciate your argument. Thank you. Thank you. May it please the Court. Martin Totaro for the Securities and Exchange Commission. First point, I'd like to thank the Court for allowing us to participate at oral argument as amicus. Very much appreciated. This case addresses whether plaintiffs may bypass the comprehensive exclusive review scheme set forth in the Exchange Act. I'd like to begin by starting with whether this is a question of exhaustion versus exclusivity. We agree with the District Court that the proper way to frame this issue is exclusivity rather than exhaustion. More recent Supreme Court cases like Thunder Basin, Elgin, and Free Enterprise all frame the question as one of exclusivity, as do the four courts of appeals that have addressed this issue previously. And we think they do that for a reason. Exclusivity and exhaustion are different. Exhaustion presumes that there could be District Court jurisdiction, whereas exclusivity forecloses District Court jurisdiction once and for all. And we think the critical difference between the two is that exhaustion is a question of when, as Judge Chazanow recognized, but exclusivity is a question of where. Is that the principle that the SEC, I mean, that's the principle really that you're concerned about preserving here? That's the first principle, but we're also very much concerned with the exclusive review scheme as well. And on to that particular point, I'd like to just sort of start at the outset that Elgin on page 2131 also involved a claim for injunctive relief. Thunder Basin referenced pre-enforcement injunctive relief on page 205. And Standard Oil also involved a claim for injunctive relief. And so I don't think that is the crux of the issue. Otherwise, as Judge King pointed out, anyone could add on a claim for injunctive relief to circumvent a comprehensive, exclusive review scheme. Review is exclusively in the Court of Appeal. Exactly. Which Court of Appeal? Two options, either the D.C. Circuit or under Section 25A of the Exchange Act where you reside or your principal place of business. Would that be the Fourth Circuit in this case? I think that would be correct, Your Honor. But regardless of whether it's the D.C. Circuit or the Fourth Circuit, it's certainly not the District Court. And the question for whether it's fairly discernible, whether the exclusive review scheme applies, I think Hill in the Eleventh Circuit had it right when it asked, is the challenge essentially an objection to a forthcoming commission order? And that's certainly the case here. But plaintiffs, however, are urged that their scheme fall outside that scheme. First, they say there's not going to be any meaningful judicial review. That is simply incorrect. If FINRA is interpreting FINRA Rule 2010 incorrectly, plaintiffs can seek relief before the Securities and Exchange Commission under Section 19E of the Exchange Act. And then if they are aggrieved, they then proceed under Section 25A of the Exchange Act. This Court's cases in National Taxpayers Union, Judge King, your Blitz opinion, and also Judge Michaels' Virginia v. United States, all keyed in on this very particular factor. Is there meaningful judicial review at the end of the process? And here there is. Plaintiffs also contend We should rule for Bennett in this case. You were here during the prior argument. I was, Your Honor. Could you also prevail? I missed the first part of your question. I apologize. If you ruled for Bennett, Ms. Bennett, in the prior case, could you prevail here? I think both cases are straightforward applications of the exclusive review scheme. I think the one difference I would note for the Court is Section 19E1A, where it says that the Commission's job in reviewing the particular decision is to determine whether what FINRA did was consistent with the purposes of the Exchange Act. Is your answer no? I think we win both cases, but we could win this case even if we did not prevail under Bennett. And I'm sorry. Tell me again how that's so. So they don't rise and fall together necessarily? We think they do rise and fall together, but it's a one-way ratchet. What? But it's a one-way ratchet. I think it would be very difficult to see how we would win in Bennett and lose in this particular case. And I would just like to sort of refer the Court to Section 19E1A of the Exchange Act, where the Commission's job in its review is to look to see whether what FINRA did is consistent with the purposes of the Exchange Act. And that speaks to, first, the exclusive or the meaningful judicial review. That's what the Commission reviews, and then that's on review in a federal court of appeals. And I also think it speaks to the agency expertise factor. Here we're talking about a Commission-approved rule, Rule 2010. We're talking about the intersection between the Exchange Act and the Securities Act. I can't think of a particular scenario which calls for greater agency expertise than what we have here. So if the SEC loses in the first case, you believe you still can win here? Yes, Your Honor. But if you win in the first case, you necessarily win here. Is that it? I think that's also correct, Your Honor. It would be difficult to see any reasonable scenario where we could prevail in Bennett but lose here. Because here, again, it's just a narrow focus on, is what FINRA's doing in its interpretation of Rule 2010 correct? We have expressed statutory language under Section 19E that allows the Commission to review that precise question. And then that can be reviewed further under Section 25A of the Exchange Act in a court of appeals. I'm also happy to answer any questions about any other particular issue, but if the Court has no further questions. I'm fine, thank you. I think we're fine. Thank you so much. Thank you. We ask that the District Court's judgment be affirmed on grounds relied on by Judge Chesnow. Franklin, you have your button? Thank you, Your Honor. If Ms. Bennett wins, I think we would have to win in this case because the meaningful review there. They're certainly not here either because the same issue is present. We would also be going to have to go through a proceeding that we claim they have no authority to institute in the first place. And to follow up on Judge Duncan's hypothetical, I think they are arguing in this case that they could charge us with a violation of any statute, the antitrust laws, the FDA Act, what, it doesn't matter. All they have to do is call it a just and equitable principle of trade and they can evade the specific principle that Congress set forth. And that is that the FINRA does the Exchange Act and the SEC does the Securities Act. But the necessary, but assuming that that's correct, my hypothetical is on target, why don't you have meaningful, why don't we have an opportunity for meaningful judicial review at the end of the administrative process? The underlying question remains. But it's not meaningful because the harm of going through the proceeding in the first place, which we claim was ultra-virus, will have already occurred by that point. It's not meaningful because the harm of the sanctions that they're And that's the harm of being exposed to the process. Yes. It's not meaningful because the harm of the sanctions that would be imposed by the time we got to court, we'd be suffering sanctions, would be irreparable to my clients and their business. And their answer, I think, is why. That's how most everybody is when they get up here. I mean, defendants up here have already been sentenced. That's true. But the difference, Your Honor, is that they have been sentenced by a court. So in this case, if FINRA sentences us, that's... Let's go back to my friend's hypothetical. So you said somebody brings their sex discrimination case, and they pursue it through the various Federal agencies first. There's some statutes that require them to do that. Yes. Well, how is that any different? Can they just decide that they're going to go right into court and get an injunction? It's different, Your Honor, for the reason that you just mentioned. That is that some statutes require them to do that. They require that they do it in a proceeding that the agency has the authority to institute and proceed upon. If FINRA were to challenge, were to argue and to prosecute our clients for sex discrimination claims, then... But that, I don't think, was her hypothetical. No. I think her hypothetical was could they do things outside of their authority. And that would be... That would be outside the authority. And so we're saying that that is different in this situation because here we have an agency acting outside its authority. And the hypotheticals that you can postulate, their agency is inside their authority. In fact, in the Bennett case, again, I think it was conceded that the agency was acting inside their authority. In this case, the statutes are clear. The FINRA has the authority only to prosecute Exchange Act, not Securities Act. So you can win even if Ms. Bennett loses? Yes. Because yours, your challenge is one, your challenge is that the FINRA action is ultraviolent. Yes. Even though theirs is a structural, would appear to be a structural constitutional argument. Yes. Simply put, Your Honor, in their case, there's no question that Congress intended that for that agency to adjudicate that proceeding. In our case, it did not. Just on briefly on the cause of action issue, I think it's been waived. I think it's an interesting issue. We presented it in our opening brief. I saw nothing in the opposing brief. I heard an oral argument. They're not presenting. It's not jurisdictional. Court doesn't need to get into it. One minor point, I just want to correct it. If there were a proceeding through the administrative process, it actually would go to the D.C. Circuit or the Ninth Circuit, which is where my clients reside. So just to follow up on a basic point here, the basic point is that Congress could not have intended. So how did this case get in the District of Maryland? We sued FINRA because they have offices in Maryland. They have a large presence in Maryland. So under the statutory process, that was sort of what I was getting at. I thought there was something about California. So it never would get to the Fourth Circuit Court of Appeals. Not this Court, Your Honor. Not this case. We're claiming that under the various exceptions. Because here's the point is this, and this is what I started with, and that is that jurisdiction does exist in the District Court unless Congress has abrogated it. We start from that principle. The federal question jurisdiction exists. There's jurisdiction under the Exchange Act. It exists unless it's been stripped by Congress. And the question ultimately is did Congress strip jurisdiction of the District Courts to hear this case and do it implicitly? And our point is that if Congress did not give the authority to this agency to prosecute these claims in the first instance, it could not have intended for this issue to be raised during that prohibited proceeding. Thank you, Your Honor. Thank you very much. We will come down and say hello to the lawyers and then go directly to Velasquez.
judges: Diana Gribbon Motz, Robert B. King, Allyson K. Duncan